# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

=

| | |
|---|---|
| **BARRY WILLIAM GEWIN,** | |
| *Petitioner,* | |
| v. | |
| **SCOTT DODRILL**, Warden for the Federal Correctional Institution (FCI) at Fort Dix, New Jersey, and | Civil Action No. 10-782 (CKK) |
| **UNITED STATES OF AMERICA,** | |
| *Respondents.* | |

## MEMORANDUM OPINION
(April 25, 2011)

Nearly seven years ago, Barry William Gewin was tried and convicted in this Court in connection with his role in the manipulation and fraudulent trading of securities in a so-called "pump and dump scheme." Mr. Gewin was sentenced to 108 months' incarceration and three years' supervised release, and was ordered to pay substantial criminal monetary penalties, including a fine and restitution. Subsequently, Mr. Gewin was held in civil contempt for his failure to comply with this Court's orders concerning payment of the criminal monetary penalties imposed, and Mr. Gewin's criminal sentence was suspended while he remained incarcerated for civil contempt—which remains the state of affairs today. Over the years that have intervened

since his conviction, Mr. Gewin has challenged his original conviction, sentence, and incarceration for criminal contempt on direct appeal and through various collateral proceedings in this Court and several others. Today, the Court closes another chapter in this tale. Two of Mr. Gewin's several petitions for a writ of habeas corpus remain outstanding, and they are both resolved in this memorandum opinion and the accompanying orders. As set forth below, both of Mr. Gewin's outstanding petitions, which are essentially coterminous, are procedurally barred and, even if they were not so barred, they would fail because they are without factual or legal merit.

## I. BACKGROUND

### A. Mr. Gewin Is Tried, Convicted, and Sentenced in this Court

On August 20, 2003, a federal grand jury indicted Mr. Gewin on one count of conspiracy to commit securities and wire fraud, one substantive count of securities fraud, and six counts of wire fraud, all in connection with the alleged manipulation and fraudulent trading of stock in a company called "2DoTrade," a Nevada corporation which had no employees and minimal assets. *See* Indictment, *United States v. Gewin*, Criminal Action No. 06-366-01 (CKK) (D.D.C. Aug. 20, 2003), ECF No. [1]. The case involved an alleged "pump and dump" scheme, with the Government arguing at trial that Mr. Gewin and his co-conspirators orchestrated a "reverse merger" of a public shell company and 2DoTrade; secured hidden control of most of the merged entity's publicly tradable stock; pumped up the share price through a campaign of strategically timed, fraudulent press releases; and sold their holdings into the artificially inflated market.

Mr. Gewin was tried before a jury in this Court in May and June of 2004, with the undersigned presiding over the trial. As he has consistently in the proceedings before this Court,

2

Mr. Gewin represented himself at trial and expressly disavowed the need or desire for legal representation.[1] The jury ultimately found Mr. Gewin guilty on one count of securities fraud; one count of conspiracy to commit securities fraud; and two counts of wire fraud. On April 22, 2005, this Court sentenced Mr. Gewin to an aggregate term of 108 months' imprisonment and three years' supervised release, ordered him to pay $1,975,786 in restitution, for which he was jointly and severally liable with his co-conspirators, and ordered him to pay a $500,000 fine, for which he was individually liable. *See* J. in a Criminal Case at 2-4, *United States v. Gewin*, Criminal Action No. 06-366-01 (CKK) (D.D.C. Apr. 22, 2005), ECF No. [426]. Further, Mr. Gewin was specifically directed to transfer all the funds in five specific accounts that he had identified in his financial affidavit and that were found to be within his control (the "Identified Accounts"). *Id.* As found by the Court during Mr. Gewin's sentencing hearing, the combined funds in the Identified Accounts demonstrated that Mr. Gewin then had the financial ability to pay $651,541.82 towards the total fine and restitution amounts.

## B. Mr. Gewin's Direct Appeal to the United States Court of Appeals for the District of Columbia Circuit Is Denied

Mr. Gewin appealed his criminal conviction and sentence to the United States Court of Appeals for the District of Columbia Circuit. In so doing, Mr. Gewin elected not to challenge the sufficiency of the evidence against him, but instead argued that this Court erred in allowing him to represent himself at trial, in admitting into evidence statements of his co-conspirators over hearsay objections, and in imposing the $500,000 fine. The United States Court of Appeals for the District of Columbia Circuit rejected all three arguments and affirmed Mr. Gewin's criminal

---

[1] As the proceedings have developed, the Court has periodically probed Mr. Gewin's desire for legal representation.

conviction and sentence. *See United States v. Gewin*, 471 F.3d 197 (D.C. Cir. 2006). With

respect to the $500,000 fine in particular, the appellate court provided as follows:

> Before imposing the $500,000 fine, the district court noted that
> Gewin claimed $651,541 in various accounts and stock worth some
> $1.5 million. The court did acknowledge a dispute between Gewin
> and a co-defendant over the stock, and, in part because of this
> uncertainty, ultimately rejected the government's request for a larger
> fine. But the court also reasoned that Gewin might not have to pay
> the entire $1,975,786 in restitution, given that some injured investors
> wouldn't ever seek compensation, and that Gewin's co-defendants
> were jointly and severally liable for whatever amount was raised.
>
> Moreover, the record suggests that Gewin was less than forthright
> with the court about the state of his finances. The district court
> commented that Gewin had "stonewalled" the court from obtaining
> updated and accurate financial information. * * * [I]t makes good
> sense to burden a defendant who has apparently concealed assets to
> prove that he has no such assets and thus cannot pay the fine. But
> Gewin claimed a net worth of more than $2 million, will be in his
> mid-40s when released, and is a college graduate and a licensed pilot.
> Thus, the record as a whole amply supports the view that Gewin was
> able or likely to become able to pay the fine imposed.

*Id.* at 203 (internal quotation marks and citations omitted). In short, the appellate court found no

error in this Court's imposition of the $500,000 fine or the Court's assessment of Mr. Gewin's

financial resources at the time of his sentencing.

**C.     Mr. Gewin Represents That He Has Access to Sufficient Funds to Satisfy His
         Fine and Restitution Obligations**

Following the resolution of Mr. Gewin's direct appeal of his criminal sentence and

conviction, the Government requested that a status conference be held to address Mr. Gewin's

compliance with his fine and restitution obligations. *See* Mot. by the United States for a Status

Conference, *United States v. Gewin*, Criminal Action No. 06-366-01 (CKK) (D.D.C. Jan. 19,

2007), ECF No. [494]. Mr. Gewin twice responded in writing, both times asserting that a status

conference was unnecessary because he intended to satisfy his obligations in full. On January 31,
2007, Mr. Gewin filed a document entitled "Judicial Notice," providing that the fine and
restitution amounts "shall be honored" and that the funds would be submitted, in United States
dollars, "in approximately 90 to 120 days." Pl.'s Judicial Notice at 1, *United States v. Gewin*,
Criminal Action No. 06-366-01 (CKK) (D.D.C. Jan. 31, 2007), ECF No. [498]. On February 22,
2007, Mr. Gewin filed a second "Judicial Notice," again affirming that the fine and restitution
amounts "shall be honored" and that the funds would be submitted "within 90 days or so." Pl.'s
Judicial Notice at 1, *United States v. Gewin*, Criminal Action No. 06-366-01 (CKK) (D.D.C.
Feb. 22, 2007), ECF No. [504].

Notwithstanding the foregoing representations, on April 24, 2007, this Court held a
hearing to address Mr. Gewin's compliance with his fine and restitution obligations. During the
course of that hearing, Mr. Gewin again represented to the Court that he then had access to funds
sufficient to satisfy both the fine and restitution amounts in full and that he intended to satisfy
both obligations. *See* Order at 1, *United States v. Gewin*, Criminal Action No. 06-366-01 (CKK)
(D.D.C. Apr. 24, 2007), ECF No. [518]. Therefore, on the same date, the Court entered an order
requiring Mr. Gewin to remit payment to the Clerk of the Court no later than June 8, 2007. *Id.* at
1-2. The Court's order further reminded Mr. Gewin that he was prohibited from dissipating,
disbursing, or otherwise diminishing the funds in the Identified Accounts, as the Court had
already "specifically ordered [him] to transfer these funds" to the Clerk of the Court in partial
satisfaction of his fine and restitution obligations. *Id.* at 2.

Despite this Court's clear and unambiguous order, Mr. Gewin failed to remit payment on
the designated date, but instead sent the Clerk of the Court a purported "International Bill of

Exchange" in the amount of $2,500,000, which was later determined to be a fictitious instrument.

Accordingly, on June 14, 2007, the Government moved for an order requiring Mr. Gewin to

show cause as to why he should not be held in civil contempt for failing to comply with the

financial obligations imposed on him by this Court, *see* Mot. for Order to Show Cause, *United*

*States v. Gewin*, Criminal Action No. 06-366-01 (CKK) (D.D.C. June 14, 2007), ECF No. [519],

which the Court granted on August 2, 2007, *see* Order to Show Cause, *United States v. Gewin*,

Criminal Action No. 06-366-01 (CKK) (D.D.C. Aug. 2, 2007), ECF No. [522].

On August 3, 2007, Mr. Gewin filed a written response to the Government's motion,

arguing that this Court lacked personal and subject matter jurisdiction from the inception of the

criminal action because he "is not a signatory to the U.S. Constitution, nor a party to that social

compact" and "is not named in its [sic] federal statutes, nor that of the State of Pennsylvania."

Pl.'s Resp. to Mot. for Order to Show Cause ¶¶ 2-3, *United States v. Gewin*, Criminal Action No.

06-366-01 (CKK) (D.D.C. Aug. 3, 2007). Meanwhile, with respect to his fine and restitution

obligations, Mr. Gewin argued, *inter alia*, that the definition of "money" is not limited to legal

tender and claimed that he had "discharge[d] the restitution debt/judgment[] under agreement or

necessity via Bill of Exchange." *Id.* ¶ 12.

### D. Mr. Gewin Files a Petition for Habeas Corpus in the United States District Court for the Northern District of West Virginia

On August 15, 2007, before this Court had an opportunity to issue a ruling on whether

Mr. Gewin should be held in civil contempt for failing to satisfy the fine and restitution

obligations imposed on him by this Court as part of his criminal conviction and sentence and

unbeknownst to the Court until much later in time, Mr. Gewin filed a petition for a writ of habeas

corpus in the United States District Court for the Northern District of West Virginia pursuant to

6

28 U.S.C. § 2241. *See* Appl. for Habeas Corpus Pursuant to 28 U.S.C. § 2241, *Gewin v. Phillips*, Civil Action No. 07-65 (REM) (JES) (N.D.W. Va. Aug. 15, 2007), ECF No. [1]. In that petition, Mr. Gewin similarly asserted that this Court "lacked subject matter jurisdiction to hear [the criminal] matter due to the action falling outside of the applicable statute of limitations" and therefore "acted without authority or jurisdiction, and imposed an unlawful sentence." Br. in Supp. of Appl. for Habeas Corpus § 2241 at 1, *Gewin v. Phillips*, Civil Action No. 07-65 (REM) (JES) (N.D.W. Va. Aug. 15, 2007), ECF No. [1-1].

On August 20, 2007, the West Virginia district court issued a written notice to Mr. Gewin advising him that while 28 U.S.C. § 2241 is the proper vehicle for challenging the execution of a sentence, 28 U.S.C. § 2255 is the appropriate vehicle for challenging the underlying conviction or the imposition of a sentence, and asked Mr. Gewin to choose between proceeding with an application under § 2241 and converting his application to one under § 2255. *See* Notification to Pet'r of Right to Consent to Proceed Under 28 U.S.C. § 2255 or to Proceed as Filed at 1-2, *Gewin v. Phillips*, Civil Action No. 07-65 (REM) (JES) (N.D.W. Va. Aug. 20, 2007), ECF No. [4]. The district court further cautioned Mr. Gewin that § 2255 petitions are generally subject to a one-year limitations period; that he could file only one § 2255 petition without restriction; and that successive § 2255 petitions would need to meet certain conditions and be certified by a United States Court of Appeals prior to being considered on the merits. *Id.* at 2-3.

Despite the sound advice of the West Virginia district court, Mr. Gewin affirmatively elected to proceed under § 2241 before that court. *See* Election by Pet'r at 1, *Gewin v. Phillips*, Civil Action No. 07-65 (REM) (JES) (N.D.W. Va. Aug. 27, 2007), ECF No. [5]. On October 7, 2008, the district court denied and dismissed with prejudice Mr. Gewin's application, reasoning

that § 2241 was the improper vehicle for attacking the validity of his conviction and sentence. *See* Report & Recommendation at 1-2, *Gewin v. Phillips*, Civil Action No. 07-65 (REM) (JES) (N.D.W. Va. Aug. 29, 2007), ECF No. [6]; Order, *Gewin v. Phillips*, Civil Action No. 07-65 (REM) (JES) (N.D.W. Va. Oct. 7, 2008), ECF No. [10].[2] Mr. Gewin did not appeal the decision and therefore his petition before the West Virginia district court is no longer at issue.

### E. Mr. Gewin Seeks Relief From His Criminal Conviction and Sentence in This Court

On August 15, 2007, the same date that he filed his § 2241 petition in the United States District Court for the Northern District of West Virginia, Mr. Gewin filed a document with this Court that he characterized as both a motion for relief from this Court's judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure and a motion to vacate this Court's judgment pursuant to 28 U.S.C. § 2255.[3] *See* Pl.'s Mot. Under Rule 60B [sic], *United States v. Gewin*, Criminal Action No. 06-366-01 (CKK) (D.D.C. Aug. 15, 2007), ECF No. [526]. Mr. Gewin argued that this Court lacked personal and subject matter jurisdiction from the inception of the

---

[2] Based upon the Court's review of the public docket, it appears that the copies of the district court's final order and judgment that were sent to Mr. Gewin were returned as undeliverable, but it appears that the magistrate judge's underlying report and recommendation was successfully delivered.

[3] Obviously, the Federal Rules of Civil Procedure have no bearing on Mr. Gewin's criminal action—the analogous rule under the Federal Rules of Criminal Procedure would be Rule 33, which permits a court "[u]pon the defendant's motion . . . [to] vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). In addressing the merits of Mr. Gewin's motion, the Court did not expressly indicate whether it was construing it as a motion for a new trial under Rule 33, as a habeas petition under 28 U.S.C. § 2255, or as both. Given this ambiguity, the Court will assume without deciding that the motion was treated solely as a motion for a new trial; however, it observes that a contrary finding would require Mr. Gewin to comply with the procedural requirements for successive habeas petitions in connection with the two petitions now before the Court.

criminal action and that his securities fraud conviction under Rule 10b-5 should be overturned because the action was not commenced within the applicable limitations period. *Id.*

On August 30, 2007, this Court denied Mr. Gewin's motion for relief. *See* Order, *United States v. Gewin*, Criminal Action No. 06-366-01 (CKK) (D.D.C. Aug. 30, 2007), ECF No. [532]. First, with respect to Mr. Gewin's personal jurisdiction argument, the Court concluded that Mr. Gewin had waived his right to object to this Court's personal jurisdiction over him when he voluntarily appeared at his arraignment and entered a plea of not guilty. *Id.* at 1. Second, with respect to Mr. Gewin's subject matter jurisdiction argument, the Court reiterated that Mr. Gewin had been charged with the violation of a number of federal statutes and that this Court maintains original jurisdiction over all offenses against the laws of the United States. *Id.* Third, with respect to Mr. Gewin's statute of limitations argument, the Court noted that Mr. Gewin's calculations were erroneously premised on the limitations period applicable to private causes of action and concluded that Mr. Gewin was indicted well within the applicable five-year statute of limitations applicable to criminal securities fraud violations. *Id.* at 2. Mr. Gewin did not appeal the decision and therefore Mr. Gewin's motion for relief is no longer at issue.

## F.     Mr. Gewin Is Held in Civil Contempt by this Court for Failure to Comply with His Fine and Restitution Obligations

On September 5, 2007, shortly after it had resolved Mr. Gewin's motion for relief from his criminal conviction and sentence, this Court held a "show cause" hearing to address Mr. Gewin's apparent failure to comply with his fine and restitution obligations. During the course of that hearing, the Court found that there was "clear and convincing evidence that Defendant Gewin ha[d] not complied with two clear and unambiguous Court Orders." Order at 1, *United States v. Gewin*, Criminal Action No. 06-366-01 (CKK) (D.D.C. Sept. 6, 2007), ECF No. [537].

9

Specifically, the Court found that Mr. Gewin failed to comply with the Court's April 22, 2005 order directing him to pay the fine and restitution amounts, which were to be partially satisfied through the transfer of the funds in the Identified Accounts to the Clerk of the Court, and had also failed to comply with the Court's April 24, 2007 order, which again directed Mr. Gewin to pay the fine and restitution amounts. *Id.* at 1-2. The Court further found that even though Mr. Gewin had represented that he had the financial ability to satisfy his fine and restitution obligations in full and stated that he intended to do so, he instead purported to settle his obligations through a fictitious instrument.[4] *Id.* at 2.

Based on these findings, the Court held Mr. Gewin in civil contempt and ordered Mr. Gewin's incarceration until he complied with the Court's orders concerning his fine and restitution obligations. *Id.* at 2. Mr. Gewin's criminal sentence was suspended in the interim, and Mr. Gewin would receive no credit towards his underlying criminal sentence while he remained incarcerated for civil contempt. *Id.* at 3.

### G. Mr. Gewin Raises the Issue of His Ability to Pay the Fine and Restitution Amounts for the First Time

On October 30, 2007, Mr. Gewin raised for the first time the issue of his financial ability to pay the fine and restitution amounts in a letter to this Court. *See* Letter from Barry William Gewin, *United States v. Gewin*, Criminal Action No. 06-366-01 (CKK) (D.D.C. Oct. 30, 2007), ECF No. [544]. Mr. Gewin wrote:

---

[4] At the time of the Court's decision, Mr. Gewin had received credit towards his total fine and restitution obligations—in the neighborhood of $1,825—reflecting *de minimis* payments he had made into the Registry for the United States District Court for the District of Columbia. Since then, Mr. Gewin has received, and will continue to receive, credit for amounts that he pays into the Registry through the United States Bureau of Prisons Financial Responsibility Program.

It appears to me that your latest order of Sept. 6, 2007 demands that I 'pay' approximately $2.5 Million, the whole fine and entire restitution, or else I sit in jail forever. Somewhere along the line you apparently got the misimpression that I have access to $2.5 Million of 'money of account.' Perhaps it was a misunderstanding from the April 24, 2007 hearing, where I stated that I had access to the whole amount and would send a check in by June 8th accordingly. I apologize for the lack of clarity at the time, but I was referring to the UCC Contract Trust Account and the International Bill of Exchange that I tendered, and nothing else. * * * So you formally are aware, I have no funds, or so-called "money", in any accounts anywhere in the world, or buried or otherwise, no gold nor silver, no tangible assets like cars, trucks, boats, planes, homes or otherwise (other than the minimal things on the Financial Affidavit) in my name or any 3rd party or entity or nominee names or otherwise. The only funds that you would accept, that I had access to in June of 2004 and all the way up to today, was the approximately $350K that was in the BB+T account and the Global Bank account [*i.e.*, two of the Identified Accounts]. I had given Ms. Ferguson[5] [the Power of Attorney] sometime in or around July of 2004. She took full control of my accounts when I was put into the DC jail in June of 2004. She has informed me that none of these funds remain.

*Id.* at 1-2. In his letter, Mr. Gewin proceeded to claim that at least some of the funds in the

Identified Accounts were "spent under necessity," asserting that he expended approximately

$357,000 in legal fees and other unidentified expenses incurred during his incarceration. *Id.* at 2.

On December 3, 2007, the Court determined that Mr. Gewin's contention regarding his

purported inability to meet his fine and restitution obligations was unavailing insofar it related to

the specific amount that he was found to be able to pay based on the financial records that he

provided to the Court at the time of his sentencing and that he was specifically instructed to

transfer in partial satisfaction of his obligations—namely, $651,541.82. *See* Order at 1-2, *United*

*States v. Gewin*, Criminal Action No. 06-366-01 (CKK) (D.D.C. Dec. 3, 2007), ECF No. [547].

---

[5] According to Mr. Gewin, Tommi Ferguson has been his common-law wife since approximately 1990 or 1991.

At the same time, the Court acknowledged that its prior civil contempt order could be construed as holding Mr. Gewin in civil contempt on the full fine and restitution amounts, which would be an amount above and beyond that which the Court previously found Mr. Gewin to be able to pay. The Court requested further briefing from the parties on the issue.

**H.    The Court Clarifies its Civil Contempt Order and Explains to Mr. Gewin the Circumstances That Could Lead to Relief From That Order**

On September 25, 2008, the Court clarified its civil contempt order, explaining that while Mr. Gewin remained liable for the full fine and restitution amounts, he was being held in civil contempt only for failing to pay the $651,541.82 that the Court previously found that Mr. Gewin had the financial ability to pay. *See* Order, *United States v. Gewin*, Criminal Action No. 06-366-01 (CKK) (D.D.C. Sept. 25, 2008), ECF No. [553]. That figure was originally derived from the combination of the funds in the Identified Accounts that were listed on Mr. Gewin's affidavit and determined to be within his control.

In addition, the Court took the opportunity to explain at some length why Mr. Gewin's October 30, 2007 letter to the Court failed to justify relief from the Court's civil contempt order. Relying on the established principle that proceedings for civil contempt do not open to reconsideration the legal or factual bases of the underlying order alleged to have been disobeyed, the Court informed Mr. Gewin that he could not challenge the Court's civil contempt order simply by attempting to relitigate the foundation for the Court's April 22, 2005 order finding that he had the financial ability to pay $651,541.82 at the time of his sentencing. *Id.* at 3-4.

However, the Court proceeded to explain what circumstances could potentially lead to relief from the Court's civil contempt order, such that would allow Mr. Gewin to resume and serve his suspended criminal sentence. Specifically, the Court advised Mr. Gewin that, as a

12

defense to civil contempt, a party may assert a *present* inability to comply with the underlying court order, observing that where compliance with the underlying court order is impossible, there is no reason to proceed with civil contempt. *Id.* at 5.

Nonetheless, the Court explained to Mr. Gewin that it was his burden to adduce sufficient evidence to establish his present inability to comply "clearly, plainly, and unmistakably," and concluded that Mr. Gewin had failed to discharge that burden through his October 30, 2007 letter to the Court. *Id.* (internal quotation marks omitted). While Mr. Gewin asserted in his letter that he was unable to pay the fine and restitution amounts, Mr. Gewin "offer[ed] nothing other than his own unsworn statement that he is currently unable to pay the amount the Court previously found him able to pay." *Id.* He offered no documentary evidence, or even sworn testimony, to establish that he in fact paid the amounts to third parties as indicated in his letter and that he did so, as he claimed, with funds in the Identified Accounts. *Id.* at 6. Furthermore, even crediting the amounts set forth in Mr. Gewin's letter, Mr. Gewin had accounted only for $357,000 of the $651,541.82 that the Court found Mr. Gewin was able to pay at the time his sentence was imposed. *Id.* at 7-8. Finally, Mr. Gewin's letter failed to acknowledge that he was explicitly instructed at the time of his sentencing not to transfer any of the funds in the Identified Accounts to third parties, but was instead ordered to transfer those funds directly to the Clerk of the Court. *Id.* at 6. In the final analysis, Mr. Gewin's October 30, 2007 letter, if anything, only raised more questions about Mr. Gewin's financial ability to pay.

The Court concluded with the following overarching observation:

> Simply put, if Defendant Gewin is now attempting to defend against
> the civil contempt proceeding by claiming a current inability to pay,
> he bears the burden of establishing that defense, and can only do so
> by *proving*, through documentary evidence of the transfers he alleges

13

and sworn statements by himself and the alleged transferees, that he can no longer pay the $651,541.82 that the Court previously found him able to pay. As his unsworn October 30, 2007 letter falls far short of that standard, the Court has no basis for considering whether Defendant Gewin has a current ability to pay the fine and restitution amounts he owes.

*Id.* at 8 (emphasis in original). Based on this conclusion, the Court continued the civil contempt order and reiterated that Mr. Gewin's criminal sentence would remain suspended during the pendency of his incarceration for civil contempt. *Id.* at 8-9.

### I. The Government Prompts Mr. Gewin to Satisfy the Fine and Restitution Amounts or Establish That He Is No Longer Able to Pay

In the months following this Court's order continuing Mr. Gewin's incarceration for civil contempt, Mr. Gewin made no attempt to prove to the Court's satisfaction that he was no longer able to pay the $651,541.82 that the Court previously found him able to pay, such that might warrant relief from the Court's civil contempt order and permit Mr. Gewin to resume and serve his criminal sentence. On July 13, 2009, the Government filed a notice with the Court, serving a copy on Mr. Gewin, advising Mr. Gewin that he would continue to be held under civil contempt unless and until he either pays the $651,541.82 that he was found able to pay or, alternatively, demonstrates to the Court that he is no longer able to pay. *See* Notice Regarding Continued Civil Contempt Status, *United States v. Gewin*, Criminal Action No. 06-366-01 (CKK) (D.D.C. July 13, 2009), ECF No. [556]. On July 15, 2009, the Court issued an order directing Mr. Gewin's attention to the Government's notice and requiring him to file a timely response with the Court indicating the manner in which he intended to proceed. *See* Order, *United States v. Gewin*, Criminal Action No. 06-366-01 (CKK) (D.D.C. July 15, 2009), ECF No. [557]. To this day, Mr. Gewin has never directly responded to the Court's order.

14

**J.      Mr. Gewin Files a Petition for Habeas Corpus in the United States District Court for the District of New Jersey**

Rather than directly responding to this Court order, on July 23, 2009, Mr. Gewin filed a petition for a writ of habeas corpus in the United States District Court for the District of New Jersey. *See* Pet. for Writ of Habeas Corpus, *Gewin v. Dodrill*, Civil Action No. 09-3612 (FLW) (D.N.J. July 23, 2009), ECF No. [1]. Mr. Gewin argued that he was unlawfully sentenced, contended that he was being held unlawfully for civil contempt, and maintained that he was innocent of all wrongdoing. *Id.* at 1-2. In particular, Mr. Gewin articulated for the first time his theory that the prosecutor in the underlying criminal action in this Court acted without "official authority," thereby perpetrating a fraud on this Court and securing a conviction against Mr. Gewin "based on trickery and fraud." Aff. to Supp. Writ of Habeas Corpus at 3-4, *Gewin v. Dodrill*, Civil Action No. 09-3612 (FLW) (D.N.J. July 23, 2009), ECF No. [1-1].

On July 28, 2009, less than a week after Mr. Gewin filed his petition, the United States District Court for the District of New Jersey construed Mr. Gewin's petition as one arising under 28 U.S.C. § 2241 and directed the Government to answer within thirty days. *See* Order to Answer, *Gewin v. Dodrill*, Civil Action No. 09-3612 (FLW) (D.N.J. July 28, 2009), ECF No. [2]. On August 27, 2009, the Government filed a timely answer. *See* Resp't Scott Dodrill's Answer to Pet. for Writ of Habeas Corpus, *Gewin v. Dodrill*, Civil Action No. 09-3612 (FLW) (D.N.J. Aug. 27, 2009), ECF No. [9].

On October 23, 2009, Mr. Gewin filed a letter with the New Jersey district court, asserting that the Government's answer was untimely, reiterating his view that the prosecutor in the criminal action before this Court was without authority to bring criminal charges against him, and maintaining that he had not been provided with "clear and compelling" evidence of his guilt.

*See* Letter from Barry William Gewin at 1-3, *Gewin v. Dodrill*, Civil Action No. 09-3612 (FLW) (D.N.J. Oct. 23, 2009), ECF No. [12]. On November 12, 2009, the Government responded with a letter of its own, maintaining that its answer was timely and that the Bureau of Prisons confirmed that Mr. Gewin had received a copy. *See* Letter from Paul J. Fishman, Esq., *Gewin v. Dodrill*, Civil Action No. 09-3612 (FLW) (D.N.J. Nov. 12, 2009), ECF No. [13]. On January 19, 2010, Mr. Gewin sent an additional letter to the New Jersey district court, which was identical to his October 23, 2009 letter, with the exception that Mr. Gewin had handwritten "please respond" on its face. *See* Letter from Barry William Gewin, *Gewin v. Dodrill*, Civil Action No. 09-3612 (FLW) (D.N.J. Jan. 19, 2010), ECF No. [14].

On February 23, 2010, the New Jersey district court construed Mr. Gewin's petition as challenging both his incarceration for civil contempt as well as his underlying criminal conviction and sentence. *See* Opinion at 6, *Gewin v. Dodrill*, Civil Action No. 09-3612 (FLW) (D.N.J. Feb. 23, 2010), ECF No. [15]. With respect to the former, the district court concluded that a petition under § 2241 was the improper vehicle for challenging the legality of Mr. Gewin's confinement. *Id.* at 6-7. With respect to the latter, the district court noted that Mr. Gewin did not appeal this Court's civil contempt order and was therefore precluded from challenging the underlying validity of that order. *Id.* at 10. Limiting its review to the propriety of Mr. Gewin's *continued* incarceration for civil contempt, the New Jersey district court determined that Mr. Gewin was not entitled to relief because he did not contend that he was then unable to comply with the underlying court orders. *Id.* at 10-12. Noting that an identical petition had been filed in this Court, the New Jersey district court declined to transfer the action to this Court for further consideration. *Id.* at 12 n.5. Mr. Gewin did not appeal the decision and therefore Mr. Gewin's

petition before the New Jersey district court is no longer at issue.

**K.      Mr. Gewin Files a Petition for a Writ of Habeas Corpus in the Criminal Action Before This Court That Is Identical to His Petition Before the United States District Court for the District of New Jersey**

On July 30, 2009, roughly contemporaneous with the filing of his petition for a writ of

habeas corpus in the United States District Court for the District of New Jersey, Mr. Gewin filed

an identical pleading, styled as a "writ of habeas corpus," in the underlying criminal action before

this Court (the "July 30, 2009 Petition"). *See* Pet. for Writ of Habeas Corpus, *United States v.*

*Gewin*, Criminal Action No. 06-366-01 (CKK) (D.D.C. July 30, 2009), ECF No. [558]. As in his

New Jersey petition, Mr. Gewin appears to challenge in his July 30, 2009 Petition both his

underlying criminal conviction and sentence as well as his incarceration for civil contempt:

> Petitioner has been unlawfully sentenced and held with an indefinite
> monetary civil contempt of court, until an unverified malicious
> contempt fine is paid. Petitioner maintains his innocence of all wrong
> doings [sic] civilly and criminally brought against Petitioner.
> Petitioner has not filed a petition seeking a 'Writ of Habeas' in this
> or any other court.[6] Petitioner is being held in violation of the United
> States Constitution and laws of the United States.

*Id.* at 2. In his petition, Mr. Gewin repeats his position, made previously at trial, that he does not

want an attorney appointed to represent him in connection with his petition. *Id.*

In an accompanying affidavit, Mr. Gewin expands on the basis of his July 30, 2009

Petition, and in particular, his contention that the prosecutor in the underlying criminal action in

this Court acted without proper authority:

> Upon an investigation and verified information, Petitioner believes

---

[6] Given that Mr. Gewin had already filed a petition for a writ of habeas corpus in the West Virginia district court, and had obtained a final ruling thereon, his representation that he had not previously filed a petition in any other court is demonstrably false.

and has been made aware that the acting prosecutor perpetrated [a] fraud on the Petitioner in acting with official authority as an Assistant United States Prosecutor. The facts are "Raja Chatterjee" is without an Oath of Office on file with the Secretary of State, affirming to protect or defend the United States Constitutional guarantee and protections. Also, "Raja Chatterjee" is not employed or registered with the D.C. District Court Bar or New York State Unified Court System, to act as an official Assistant Prosecutor, for the United States, but has and is employed as a staff attorney of Morgan Stanley . . . . Therefore Raja Chatterjee intimidation [sic] of criminal and civil prosecution against Petitioner was based on trickery and fraud.

Aff. to Support Writ of Habeas Corpus at 1, *United States v. Gewin*, Criminal Action No. 06-366-01 (D.D.C. July 30, 2009), ECF No. [558-1].

On August 3, 2009, this Court issued an order observing that Mr. Gewin's pleading was not responsive to its July 15, 2009 order requiring Mr. Gewin to file a timely response indicating whether he intended to seek relief from this Court's civil contempt order either by paying the fine and restitution amounts or, alternatively, by attempting to demonstrate to the Court that he is no longer able to pay. *See* Min. Order, *United States v. Gewin*, Criminal Action No. 06-366-01 (D.D.C. Aug. 3, 2009). Despite the unresponsiveness of Mr. Gewin's filing, the Court directed the Government to file a responsive pleading by September 4, 2009. *Id.* The Government was subsequently afforded a one-week extension of time, and it ultimately filed a timely response on September 11, 2009. *See* Resp. of the United States to Def.'s "Writ of Habeas Corpus," *United States v. Gewin*, Criminal Action No. 06-366-01 (D.D.C. Sept. 11, 2009), ECF No. [562].

On November 19, 2009, this Court issued an order reiterating that Mr. Gewin's July 30, 2009 Petition was "entirely unresponsive to the Court's clear and unambiguous order of July 15, 2009 and [did] not include any indication whether Mr. Gewin intend[ed] to pursue either of the two options outlined [in that order] in an effort to discharge the civil contempt finding." Order at

18

2, *United States v. Gewin*, Criminal Action No. 06-366-01 (D.D.C. Nov. 19, 2009) (internal

quotation marks omitted), ECF No. [563]. Therefore, the Court found that Mr. Gewin should

continue to be held in civil contempt. *Id.* at 2. However, because the Government's response did

not purport to address Mr. Gewin's July 30, 2009 Petition as if it were an independent petition

for a writ of habeas corpus, the Court directed the Government to file an appropriate response by

no later than December 21, 2009. *Id.* at 2-3. On December 21, 2009, the Government filed a

timely response, this time treating Mr. Gewin's July 30, 2009 Petition as a petition for a writ of

habeas corpus. *See* Resp. of the United States to Def.'s "Writ of Habeas Corpus," *United States

v. Gewin*, Criminal Action No. 06-366-01 (D.D.C. Dec. 21, 2009), ECF No. [564]. Mr. Gewin's

July 30, 2009 Petition remains outstanding and is addressed in this memorandum opinion.

### L. Mr. Gewin Sends a Letter to the Court Challenging the Actions of the United States District Court for the District of New Jersey and Further Disputing the Basis for His Continued Incarceration

Mr. Gewin's July 30, 2009 Petition in the criminal action before this Court remained

outstanding as of April 6, 2010, when Mr. Gewin filed a letter with this Court maintaining that

he had been incarcerated "without warning or clear explanation or compelling evidence,"

complaining that he had been required to "pay an outrageous fine to unnamed victims," and

reiterating his view that the prosecutor in the underlying criminal action was without official

authority. Letter from Barry William Gewin at 1-2, *United States v. Gewin*, Criminal Action No.

06-366-01 (D.D.C. Apr. 6, 2010), ECF No. [565]. In addition, Mr. Gewin also argued for the

first time that the United States District Court for the District of New Jersey[7] was required to

---

[7] Based on his allegations, it is clear that Mr. Gewin's letter challenges the timeliness
with which the United States District Court for the District of New Jersey acted on his petition
before that court, and not the timeliness of this Court's response to his July 30, 2009 Petition in

issue a writ of habeas corpus within three days of the filing of his petition in that court. *Id.* at 1. While Mr. Gewin's letter is unattached to any particular petition before this Court, the Court shall address Mr. Gewin's additional argument in this memorandum opinion.

### M.  Mr. Gewin Files a Petition for Habeas Corpus with the United States Court of Appeals for the Third Circuit, Which Is Later Transferred to This Court

On April 15, 2010, Mr. Gewin filed a petition for a writ of habeas corpus with the United States Court of Appeals for the Third Circuit (the "April 15, 2010 Petition").[8] *See* Pet. for Great Writ of Habeas Corpus, *Gewin v. Dodrill*, No. 10-2101 (3d Cir. Apr. 15, 2010), ECF No. [1]. On April 23, 2010, in accordance with Rule 22(a) of the Federal Rules of Appellate Procedure,[9] the United States Court of Appeals for the Third Circuit issued an order transferring the April 15, 2010 Petition to this Court for a final resolution. *See* Order at 1, *Gewin v. Dodrill*, No. 10-2101 (3d Cir. Apr. 23, 2010), ECF No. [2]. On May 13, 2010, the petition was formally transferred to this Court and a new civil action was opened under the caption of *Gewin v. Dodrill*, Civil Action No. 10-782 (CKK) (D.D.C.).

Mr. Gewin's April 15, 2010 Petition is essentially coterminous with his July 30, 2009 Petition, appearing to challenge both his underlying criminal conviction and sentence as well as

the underlying criminal action, even though the New Jersey district court had already denied Mr. Gewin's petition several weeks before he filed his letter with this Court.

[8] The Court shall refer to Mr. Gewin's pleading as the April 15, 2010 Petition, even though it was not actually filed in this Court until May 13, 2010.

[9] That rule provides, in relevant part, as follows:

> An application for a writ of habeas corpus must be made to the appropriate district court. If made to a circuit judge, the application must be transferred to the appropriate district court.

Fed. R. App. P. 22(a).

his incarceration for civil contempt and on the same grounds. More specifically, Mr. Gewin

again asserts that he was "unlawfully prosecuted and sentenced" and that he is "being held

illegally with an indefinite, monetary civil contempt of court, until an unverified, malicious

contempt fine is paid." Pet. for Great Writ of Habeas Corpus at 2, *Gewin v. Dodrill*, Civil Action

No. 10-782 (CKK) (D.D.C. May 13, 2010), ECF No. [1-1]. Mr. Gewin "maintains his innocence

of all alleged wrongdoings brought against him both civil and criminal," and reiterates and

expands upon his allegation that the prosecutor in the underlying criminal action committed a

fraud upon him and this Court:

> This fraud was committed in the United States District Court for the
> District of Columbia by a private staff attorney with Morgan Stanley
> in New York, one of Petitioner's competitors in the stock market
> business. Morgan Stanley had a vested interest in seeing Petitioner,
> and other competitors like him, imprisoned and/or banned from this
> business.
>
> Mr. Raja Chatterjee and other co-conspirators filed an invalid and
> fraudulent "indictment" on August 20, 2003. Mr. Chatterjee posed
> as and impersonated a federal officer, namely an Assistant United
> States Attorney with the United States Department of Justice,
> Criminal Division, Fraud Section, in Washington, D.C.

*Id.* Based on these allegations, Mr. Gewin "request[s] that the false 'indictment' and every

proceeding, document, etc., including, but not limited to, any and all orders, judgments or the

like, pertaining to [him], be immediately vacated, dismissed, reversed and thrown out, and that

an order for [his] immediate release be issued." *Id.* at 2-3. As he consistently has before this

Court, Mr. Gewin repeats his position that he does not want an attorney appointed to represent

him in connection with his petition. *See* Aff. in Supp. of Pet. for Writ of Habeas Corpus at 4-5,

*Gewin v. Dodrill*, Civil Action No. 10-782 (CKK) (D.D.C. May 13, 2010), ECF No. [1-1].

On May 19, 2010, a matter of days after Mr. Gewin's April 15, 2010 Petition was

21

transferred to and filed with this Court, the Court directed the Government to file an answer by

no later than July 19, 2009. *See* Order, *Gewin v. Dodrill*, Civil Action No. 10-782 (CKK)

(D.D.C. May 19, 2010), ECF No. [4]. On July 19, 2010, the Government filed a timely response.

*See* Government's Resp. to Show Cause Order, *Gewin v. Dodrill*, Civil Action No. 10-782

(CKK) (D.D.C. July 19, 2010), ECF No. [9]. Mr. Gewin's April 15, 2010 Petition remains

outstanding and is addressed in this memorandum opinion.

### N.    Mr. Gewin Files a Petition for a Writ of Habeas Corpus in the United States Courts of Appeals for the District of Columbia Circuit

On April 15, 2010, the same date he filed a petition with the United States Court of

Appeals for the Third Circuit, Mr. Gewin filed an identical petition directly with the United

States Court of Appeals for the District of Columbia Circuit. *See* Pet. for Great Writ of Habeas

Corpus, *In re Barry Gewin*, No. 10-3028 (D.C. Cir. Apr. 15, 2010), Document No. [1240861].

On June 11, 2010, the United States Court of Appeals for the District of Columbia Circuit

concluded that it was without jurisdiction to hear Mr. Gewin's petition because an application for

a writ of habeas corpus must be made to the district court. *See* Order, *In re Barry Gewin*, No. 10-

3028 (D.C. Cir. June 11, 2010), Document No. [1249471]. Meanwhile, noting that a similar

petition was currently pending before this Court,[10] the appellate court declined to transfer the

petition, dismissing it outright. *Id.* Therefore, Mr. Gewin's petition filed with the United States

Court of Appeals for the District of Columbia Circuit is no longer at issue.

_____

[10] Even though an identical petition—the April 15, 2010 Petition that was transferred to this Court from the United States Court of Appeals for the Third Circuit—was then pending before this Court, the reference to a "similar" petition in United States Court of Appeals for the District of Columbia Circuit's order appears to be a reference to the July 30, 2009 Petition, reaffirming this Court's conclusion that the two petitions are essentially coterminous.

**O.    Mr. Gewin Files an Additional Copy of His July 30, 2009 Petition with this Court**

On May 19, 2010, Mr. Gewin filed an additional copy of his July 30, 2009 Petition with

this Court. *See* Pet. for Writ of Habeas Corpus, *Gewin v. Dodrill*, Civil Action No. 10-782

(CKK) (D.D.C. May 19, 2010), ECF No. [3]. The submission is identical to his July 30, 2009

Petition, with the exception of a handwritten notation at the top of the document stating, "Third

Request. Must be answered according to the U.S. Constitution." *Id.* at 1. It is not clear which of

Mr. Gewin's various submissions to this Court and other courts constitute the two alleged prior

requests referenced, though presumably one of them is the July 30, 2009 Petition itself.

**P.    Mr. Gewin Files Various Documents with this Court Challenging the Timeliness of the Response to His Petitions**

On June 16, 2010, Mr. Gewin filed a letter with this Court, acknowledging that he had

received this Court's order directing the Government to respond to his April 15, 2010 Petition

but nonetheless complaining that the Court was yet to "issue[] the 'Writ Of Habeas', which [he]

paid for and filed THREE (3) TIMES." Letter from Barry William Gewin at 1, Civil Action No.

10-782 (CKK) (D.D.C. June 16, 2010), ECF No. [5]. Mr. Gewin further argued:

> As you should be made aware, your ORDER is one of many
> ORDERS directing unnamed persons to do something, and all
> ORDERS have been ignored! Last year, Freda L. Wolfson [*i.e.*, the
> district judge assigned to Mr. Gewin's action before the United States
> District Court for the District of New Jersey] issued an ORDER on
> July 28, 2009 requiring Respondents to respond to her ORDER with
> 'certified copies', etc., and they failed to do so. Then you issued
> another ORDER in November of last year ordering Respondents to
> respond to the same issues, and they failed a second time to do so.
>
> * * *
>
> I am asking you to grant the Writ immediately without any further
> delay. Please consider once again the fact that Respondents have

> already had TWO (2) opportunities to answer this Writ and have
> failed.

*Id.* at 1-2. Mr. Gewin then proceeded to repeat his allegation that the prosecutor in the underlying criminal action was without official authority and perpetrated a fraud. *Id.*

On June 30, 2010, Mr. Gewin filed another document challenging the timeliness of the response to his various petitions, this one styled as an affidavit directed to the Chief Judge of the United States District Court for the District of Columbia. *See* Aff., *Gewin v. Dodrill*, Civil Action No. 10-782 (CKK) (D.D.C. June 30, 2010), ECF No. [6].[11] Therein, Mr. Gewin ascribes various errors to the actions of both this Court and the New Jersey district court:

- With respect to his petition before the New Jersey district court, Mr. Gewin contended that the Government failed to respond to his petition in the time allotted by the New Jersey district court; argued that the New Jersey district court should therefore have granted his petition as a matter of law; and suggested that the New Jersey district court instead did not "rule at all." *Id.* ¶¶ 1-2.

- With respect to his July 30, 2009 Petition before this Court, Mr. Gewin similarly contended that the Government failed to file a response in the time allotted by the Court; and argued that the Court should therefore have granted his July 30, 2009 Petition as a matter of law. *Id.* ¶ 3.

- With respect to the April 15, 2010 Petition filed with the United States Court of Appeals for the Third Circuit and later transferred to this Court, Mr. Gewin

---

[11] Mr. Gewin's original filing was not notarized, but a notarized copy was subsequently filed with the Court. *See* Aff., *Gewin v. Dodrill*, Civil Action No. 10-782 (CKK) (D.D.C. July 6, 2010), ECF No. [7].

asserted that the deadline set by this Court for the Government to respond—July 19, 2010—was "approximately one full year after the Writ was filed, and 60 days after [the] Order"; argued that a writ of habeas corpus must be answered within three days of its filing pursuant to the United States Constitution and 22 U.S.C. § 2243;[12] and suggested that the time periods designated by this Court "exceed[ed] the authorized time limits imposed by law." *Id.* ¶¶ 4-6.

On September 7, 2010, Mr. Gewin filed yet another document with this Court challenging the timeliness of the response to his various petitions, this one styled as an "affidavit" but unnotarized. *See* Aff., *Gewin v. Dodrill*, Civil Action No. 10-782 (CKK) (D.D.C. Sept. 7, 2010), ECF No. [10]. Therein, Mr. Gewin acknowledged that he had received the Government's July 19, 2010 response to his April 15, 2010 Petition, but contended that the Government's response was "an unsigned, generic document of no commercial, judicial or lawful (or otherwise) value or effect." *Id.* at 1. Mr. Gewin proceeded to aver that the Government had failed to introduce evidence proving that the prosecutor in the underlying criminal action was authorized to serve as counsel for the United States. *Id.* Mr. Gewin concluded by characterizing his April 15, 2010 Petition as "unrebutted," and asserted that his immediate release was required. *Id.*

**Q.  Mr. Gewin Files What Appears to Be Another Fictitious Instrument in Purported Satisfaction of His Fine and Restitution Obligations**

On February 4, 2011, this Court issued an order scheduling a status conference on the matter of Mr. Gewin's continued incarceration for civil contempt. *See* Order, *United States v. Gewin*, Criminal Action No. 06-366-01 (D.D.C. Feb. 4, 2011), ECF No. [571]. *See* Order (Feb.

---

[12]  In making this assertion, Mr. Gewin appears to confuse a petition or application for a writ of habeas corpus with the writ itself.

4, 2011), Docket No. [571]. On or about March 8, 2011, Mr. Gewin sent a document to the Court entitled, "Demand for Settlement, Discharge, Closure & Setoff," which Mr. Gewin expressly styled as a response to the Court's scheduling order. *See* Pl.'s Demand for Settlement, Discharge, Closure & Setoff, *Gewin v. Dodrill*, Civil Action No. 10-782 (CKK) (D.D.C. Apr. 19, 2011), ECF No. [11]. Included with the document was an apparently fictitious "Money on Account Order," made payable to "United States of America, Inc." in the sum of $4,000,000, an amount far in excess of Mr. Gewin's fine and restitution obligations. *Id.* at 3.

## II. LEGAL STANDARD

Under 28 U.S.C. § 2255, a prisoner in custody under sentence of a federal court may move the sentencing court to vacate, set aside, or correct its sentence if the prisoner believes that his sentence was imposed "in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. The circumstances under which such a motion will be granted, however, are limited in light of the premium placed on the finality of judgments and the opportunities prisoners have to raise most of their objections during trial or on direct appeal. "[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). Nonetheless, "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues, and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255. The petitioner bears the burden of proving his claims by a preponderance of the evidence. *United States v. Thompson*, 587 F. Supp. 2d 121, 122

(D.D.C. 2008) (citing *United States v. Simpson*, 475 F.2d 934, 935 (D.C. Cir. 1973)).

### III. DISCUSSION

Two petitions for a writ of habeas corpus are pending before the Court—namely, Mr. Gewin's July 30, 2009 Petition and his April 15, 2010 Petition. The two petitions are essentially coterminous in terms of the grounds for relief asserted, and given that Mr. Gewin has supplemented the record with various letters and submissions conflating the two petitions, they are best addressed together. The Court's analysis proceeds in three parts. First, the Court shall begin by explaining why it construes both petitions as arising under 28 U.S.C. § 2255, and not 28 U.S.C. § 2241. Second, the Court explain why both petitions are procedurally barred in their entireties. Thereafter, the Court shall explain why, even assuming the petitions were not procedurally barred, they would fail on the merits. In the final analysis, the record conclusively shows that Mr. Gewin is not entitled to relief, and therefore the Court shall deny both his July 30, 2009 Petition and his April 15, 2010 Petition.

#### A. The Court Construes Mr. Gewin's Petitions as Arising Under 28 U.S.C. § 2255, Not 28 U.S.C. § 2241

As a threshold matter, the Court construes both Mr. Gewin's July 30, 2009 Petition and his April 15, 2010 Petition to arise under 28 U.S.C. § 2255 and not 28 U.S.C. § 2241. Mr. Gewin does not specify the statute upon which intends to rely in either petition; however, he plainly seeks to challenge his underlying criminal conviction and sentence and his continued incarceration for civil contempt, and it is well-established that § 2255 is "the usual avenue for federal prisoners seeking to challenge the legality of their confinement."[13] *In re Dorsainvil*, 119

---

[13] On rare occasions, a federal prisoner may be permitted to challenge his underlying conviction or sentence under § 2241 if he can establish that a proceeding under § 2255 would be

27

F.3d 245, 249 (3d Cir. 1997). Section 2241, in contrast, is the proper vehicle for "challenges to the manner in which a sentence is executed," *Gewin v. Dodrill*, Civil Action No. 09-3612 (FLW), 2010 WL 703169, at \*2 (D.N.J. Feb. 23, 2010), and Mr. Gewin's arguments are in no way directed towards the execution of his sentence. Therefore, the Court shall analyze both the July 30, 2009 Petition and the April 15, 2010 Petition under the rubric of § 2255.

Regardless, entertaining a petition by Mr. Gewin under § 2241 would be inappropriate for at least two independent reasons. First, district courts are prohibited from entertaining successive § 2241 petitions where "it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for a writ of habeas corpus" unless it is first certified by the appropriate court of appeals. 28 U.S.C. § 2244(a). In this case, Mr. Gewin has already brought an identical petition for habeas corpus under § 2241 in the district court encompassing his place of confinement—the United States District Court for the District of New Jersey—and that court dismissed Mr. Gewin's petition on the merits, and Mr. Gewin has not sought certification from the appropriate court of appeals. Second, district courts are expressly limited to granting habeas relief under § 2241 "within their respective jurisdictions," 28 U.S.C. § 2241(a), and "for core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement," *Rumsfeld v. Padilla*, 542 U.S. 426, 443

_____

inadequate or ineffective. *See* 28 U.S.C. § 2255(e) ("An application for a writ of habeas corpus [on] behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained . . . unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention."). Mr. Gewin has made no attempt to show that this case presents one of those rare occasions, and the Court finds that it does not. In any event, as described elsewhere, this Court is without jurisdiction to consider Mr. Gewin's petition to the extent it arises under § 2241.

(2004).[14] In this case, Mr. Gewin was incarcerated at a federal detention facility located beyond this Court's jurisdiction at the time he filed both his petitions,[15] rendering this Court without jurisdiction to hear a petition challenging Mr. Gewin's physical confinement under § 2241.

**B.     Mr. Gewin's Petitions Are Procedurally Infirm**

Mr. Gewin's July 30, 2009 Petition and his April 15, 2010 Petition both appear to challenge (a) his underlying criminal conviction and sentence and (b) his incarceration for civil contempt. Irrespective of their target, Mr. Gewin's petitions are procedurally infirm: all his arguments are either time-barred or have been procedurally defaulted.

**1.     Mr. Gewin's Petitions Are Time-Barred Insofar as They Challenge His Underlying Criminal Conviction and Sentence**

In order to be timely, a petition for relief under § 2255 must be filed within a one-year limitations period. *See* 28 U.S.C. § 2255(f). The statute provides as follows:

The limitation period shall run from the latest of—

(1)     the date on which the judgment of conviction becomes final;

(2)     the date on which the impediment to making a motion

---

[14] Viewed from a slightly different perspective, "[b]ecause a writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in custody, a court may issue the writ only if it has jurisdiction over that person." *Stokes v. U.S Parole Comm'n*, 374 F.3d 1235, 1238 (D.C. Cir. 2004) (internal quotation marks and citations omitted and notations altered).

[15] Mr. Gewin is expected to be transferred to a detention facility in Virginia on a temporary basis in anticipation of a status hearing before this Court around the time of the issuance of this memorandum opinion. However, he was detained at a federal detention facility in New Jersey at the time he filed both his petitions. Irrespective of subsequent transfer, "habeas jurisdiction as a general matter continues to be in the district where the prisoner was incarcerated at the time the habeas petition was filed." *Chatman-Bey v. Thornburgh*, 864 F.2d 804, 806 n.1 (D.C. Cir. 1988) (en banc); *accord Stern v. Fed. Bureau of Prisons*, 601 F. Supp. 2d 303, 306 (D.D.C. 2009).

created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3)    the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4)    the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

As the Supreme Court has observed, "[i]n most cases, the operative date from which the limitation period is measured will be . . . the date on which the judgment of conviction becomes final." *Dodd v. United States*, 545 U.S. 353, 357 (2005). In this case, Mr. Gewin's underlying criminal conviction and sentence were affirmed by the United States Court of Appeals for the District of Columbia Circuit on December 22, 2006. Because Mr. Gewin's July 30, 2009 Petition and April 15, 2010 Petition were both filed far more than one year after his conviction and sentence became final, they are time-barred. *See* 28 U.S.C. § 2255(f)(1).

Significantly, Mr. Gewin has never suggested—let alone provided any evidence in support of such a suggestion—that the limitations period should be determined according to one of the other triggering events specified in 28 U.S.C. § 2255(f): he never claims that the Government created any impediment that prevented him from filing his petitions in a timely manner; his petitions do not turn on any newly recognized right; and he does not claim that any of the purported "facts" supporting his petitions could not have been discovered with due diligence years ago. *See* 28 U.S.C. § 2255(f)(2)-(4). Mr. Gewin has not claimed, for instance, that the facts concerning the status of the prosecutor in the underlying criminal action could not

30

have been discovered with due diligence at the time of trial, at which he was continuously present, or on direct appeal. *See United States v. Smith*, __ F. Supp. 2d __, 2011 WL 381060, at *2 (D.D.C. Feb. 3, 2011) (supporting facts "were all known to [petitioner] or could have been easily discovered even at the time of sentencing and appeal."). This is particularly so given that Mr. Gewin was expressly warned of the one-year limitations period by the West Virginia district court as early as August 20, 2007, and yet he did not file the petitions now before the Court for nearly another two years. *See* Notification to Pet'r of Right to Consent to Proceed Under 28 U.S.C. § 2255 or to Proceed as Filed at 2-3, *Gewin v. Phillips*, Civil Action No. 07-65 (REM) (JES) (N.D.W. Va. Aug. 20, 2007), ECF No. [4]. Regardless, the Court finds that a "duly diligent person in petitioner's circumstances would have discovered" the facts purportedly supporting his petitions, if at all, at the time of trial or shortly thereafter. *Wims v. United States*, 225 F.3d 186, 190 (2d Cir. 2000). This Court can find no reason—and Mr. Gewin has certainly provided none—why a contrary conclusion should be reached in this case.

For the foregoing reasons, the Court concludes that Mr. Gewin's petitions are time-barred insofar as they seek to challenge his underlying criminal conviction and sentence.

## 2. Mr. Gewin Has Procedurally Defaulted Any Arguments Challenging the Underlying Civil Contempt Order

It is axiomatic that the writ of habeas corpus is an extraordinary remedy and "will not be allowed to do service for an appeal." *Reed v. Farley*, 512 U.S. 339, 354 (1994) (internal quotation marks omitted). Therefore, "[w]here a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Bousley v. United States*, 523 U.S. 614, 622 (1998) (internal citations omitted). In this case, Mr. Gewin

never sought to appeal this Court's civil contempt order and he has therefore procedurally defaulted his claims in this regard by failing to raise them on direct review. Meanwhile, Mr. Gewin satisfies neither of the exceptions to this well-reasoned limitation on the scope of habeas review: he has never suggested, let alone established, that "some objective [external] factor" prevented him from challenging the civil contempt order on direct appeal, *United States v. Lawson*, 608 F. Supp. 2d 58, 62 (D.D.C. 2009); nor has he ever articulated any basis that would lead this Court to conclude that it somehow erred in holding him in civil contempt, such that might support a finding of actual prejudice or innocence. Indeed, apart from passing references to "an unverified malicious contempt fine," the arguments that appear in Mr. Gewin's petitions focus solely on the legality of his underlying criminal conviction and sentence. Under these circumstances, the Court concludes that Mr. Gewin's petitions are procedurally barred insofar as they seek to challenge his incarceration for civil contempt.

### C.    Mr. Gewin's Petitions Nevertheless Fail on the Merits

Even assuming, *arguendo*, that Mr. Gewin's July 30, 2009 Petition and his April 15, 2010 Petition were not procedurally barred, the Court would nevertheless deny each petition on the merits. The Court shall address each of the arguments in Mr. Gewin's petitions *seriatim*.

First, Mr. Gewin tenders a litany of arguments with a level of generality that renders them entirely meaningless. Specifically, he argues that he has been unlawfully sentenced; that he was incarcerated in the absence of compelling evidence, clear explanation, or advance warning; and that he is innocent of all wrongdoing. Each of these arguments is stated only in sweeping and conclusory terms, within no meaningful attempt to provide an explanation as to their precise basis, let alone to provide competent evidence in support. Such an approach is patently

32

inadequate to discharge a petitioner's burden of establishing that he may be entitled to the extraordinary relief of a writ of habeas corpus. In any event, each of Mr. Gewin's generalized claims is belied by everything in the record. Mr. Gewin was tried, convicted, and sentenced only after a full and fair trial before his peers; he was given the opportunity to raise objections to his conviction and sentence on appeal, but he elected not to challenge the sufficiency of the evidence against him; and he has already secured final rulings on the merits of two separate habeas petitions filed in other courts. Mr. Gewin's generalized arguments simply do not entitle him the extraordinary relief of habeas corpus.

Second, Mr. Gewin suggests, with minimal explication, that his contempt fine is "malicious," "unverified," and "outrageous," and complains that he is being held "indefinitely" in civil contempt pursuant to this Court's orders. The Court has already explained to Mr. Gewin on a number of occasions and in considerable detail exactly what he must do in order to secure relief from this Court's civil contempt order. *See, e.g.*, Order, *United States v. Gewin*, Criminal Action No. 06-366-01 (CKK) (D.D.C. Sept. 25, 2008), ECF No. [553]. The Court considers it unnecessary to revisit the matter in this context, particularly in light of the fact that Mr. Gewin is currently scheduled to appear before this Court imminently so that the Court may once again explain to him what he must do in order to secure such relief. Suffice it to say that, to this day, Mr. Gewin still has made no attempt to either (a) pay the $651,541.82 towards his fine and restitution obligations that he was determined to have the financial ability to pay at the time of his sentencing and specifically directed to transfer to the Clerk of the Court, or (b) "prov[e] through documentary evidence of the transfers he alleges and sworn statements by himself and the alleged transferees, that he can no longer pay the $651,541.82 that the Court previously found

33

him able to pay." *Id.* at 8. To the extent Mr. Gewin believes he may discharge his obligations by periodically submitting fictitious financial instruments to this Court, he is mistaken.

Third, through a succession of filings, Mr. Gewin has complained about the timeliness of the responses to his several petitions for habeas corpus in this Court and others. In so doing, Mr. Gewin consistently conflates his various petitions, and appears to be laboring under a fundamental misunderstanding as to the difference between petitions for a writ of habeas corpus and the writ itself. Given this state of affairs, the Court has taken pains to describe in exhaustive detail the history behind each of Mr. Gewin's petitions above. However, a few specific observations are warranted here. First, despite Mr. Gewin's repeated assertion to the contrary, the Government has never failed to respond to a single one of his petitions, nor has it ever responded in an untimely fashion. This is true of Mr. Gewin's petition before the New Jersey district court and, more importantly, of the only petitions that remain outstanding and pending before this Court—namely, the July 30, 2009 Petition and the April 15, 2009 Petition. In each instance, the Government responded within the time period expressly designated by this Court. Second, Mr. Gewin somewhat perplexingly suggests that the New Jersey district court never ruled on his petition before that court; setting aside the fact that this contention is irrelevant to the merits of the only two petitions before this Court, the contention is false—the New Jersey district court issued a final ruling denying Mr. Gewin's petition on February 23, 2010, weeks before Mr. Gewin tendered his allegation. *See* Opinion at 6, *Gewin v. Dodrill*, Civil Action No. 09-3612 (FLW) (D.N.J. Feb. 23, 2010), ECF No. [15]. In the final analysis, the true timelines are as follows: Mr. Gewin's first petition before this Court—the July 30, 2009 Petition—was filed on July 30, 2009, the Court ordered a response from the Government a mere four days later, and the

Government responded in the time period designated by the Court, which was slightly over a month after the Court's order. Mr Gewin's second petition—the April 15, 2010 Petition—was transferred to and filed with this Court on May 13, 2010, the Court ordered a response from the Government less than a week later, and the Government responded within the time period designated by the Court, which was a month after the Court's order. These time periods are not unusual, and they certainly do not entitle Mr. Gewin to the extraordinary relief of habeas corpus.

Separate and apart from his misstatements as to the procedural history behind his petitions, Mr. Gewin appears to be laboring under a fundamental misunderstanding as to the difference between petitions for a writ of habeas corpus and the writ itself. He repeatedly suggests that the Government's failure to respond to his petitions within three days of their filing means that his petitions should be granted as a matter of law. However, the three-day time limitation referenced by Mr. Gewin applies not to petitions, but to issued writs themselves. That is, an issued writ must "be returned within three days unless for good cause additional time, not exceeding twenty days, is allowed." 28 U.S.C. § 2243. In other words, the provision merely directs the petitioner's custodian to release the petitioner within a certain time period only after the district court has determined that the petitioner's release is appropriate. Meanwhile, the district court is in no way precluded from affording the Government additional time to respond in writing to a petitioner's underlying petition, particularly where, as here, there is good cause for affording the Government sufficient time to craft a meaningful response.

Finally, Mr. Gewin argues most forcefully that the lead prosecutor in the underlying criminal action—a Trial Attorney assigned to the Fraud Section of the Criminal Division of the United States Department of Justice—somehow perpetrated a fraud upon him and this Court.

35

Truth be told, the precise contours of Mr. Gewin's argument in this regard are not easy to define, but his argument appears to be four-fold. Affording Mr. Gewin's petitions and subsequent submissions a generous construction, Mr. Gewin grounds both of his petitions in allegations that the prosecutor was a Trial Attorney with the United States Department of Justice and not an Assistant United States Attorney assigned to the United States Attorney's Office for the District of Columbia; the prosecutor did not have an "Oath of Office" filed with the Secretary of State at the time of Mr. Gewin's criminal trial; the prosecutor was not admitted to the Bar of this Court at the time of Mr. Gewin's criminal trial; and the prosecutor was a staff attorney with a major financial institution at the time of Mr. Gewin's criminal trial. With the exception of the undisputed fact that the lead prosecutor was a Trial Attorney with the United States Department of Justice at the time of Mr. Gewin's criminal trial, which is irrelevant to the validity of Mr. Gewin's criminal conviction and sentence, all of these contentions fail at the outset for the simple reason that they rest entirely on Mr. Gewin's speculation.

That is, Mr. Gewin has introduced no evidence—none—suggesting that the prosecutor did not have an "Oath of Office" filed with the Security of State, was not admitted to the Bar of this Court, or was a staff attorney with a major financial institution at the time of Mr. Gewin's criminal trial. While Mr. Gewin has submitted an unauthenticated and partially redacted letter from the Attorney Registration Unit of the New York State Unified Court System, which identifies the prosecutor's registered business address at the time of the letter as the offices of a major financial institution in New York City, the letter is dated March 12, 2009—nearly five years after Mr. Gewin's jury trial concluded. *See* Aff. to Support Writ of Habeas Corpus at 1, *United States v. Gewin*, Criminal Action No. 06-366-01 (D.D.C. July 30, 2009), ECF No. [558-

1]. Similarly, while Mr. Gewin has submitted an unauthenticated and partially redacted letter from the District of Columbia Bar purporting to identify certain individuals with active and inactive bar memberships at the time of the letter, that letter is also dated March 12, 2009 and therefore in no way evidences that the prosecutor was not admitted to the District of Columbia Bar[16] at the time of Mr. Gewin's criminal trial. *Id.* Moreover, that letter only purports to provide the status of bar memberships for individuals "[o]ut of a list of names [Mr. Gewin] provided," and there is no indication that the prosecutor was among the individuals on the list. *Id.* In short, Mr. Gewin has failed to provide this Court with any evidence that would even remotely suggest that his arguments may turn out to be supported and entitle him to relief.

Furthermore, Mr. Gewin's arguments concerning the prosecutor lack legal merit. The Federal Rules of Criminal Procedure define the term "attorney for the government" broadly to include "the Attorney General or an authorized assistant," "a United States attorney or an authorized assistant," or "any other attorney authorized by law to conduct proceedings under these rules as a prosecutor," Fed. R. Crim. P. 1(b)(1), a definition that is more than sufficiently broad to encompass the prosecutor in Mr. Gewin's criminal action. Meanwhile, attorneys that are employed or retained by the United States, such as the prosecutor in Mr. Gewin's criminal action, simply are not required to be members of the Bar of this Court in order to appear before, and practice in, this Court. *See* LCrR 44.1(d)-(e). Regardless, even assuming, *arguendo*, that there was some defect in the appointment of the Government's counsel in the underlying criminal action, that would not divest this Court of jurisdiction to hear the criminal action nor

---

[16] In relying on this letter, Mr. Gewin appears to confuse the Bar of this Court with the District of Columbia Bar.

necessarily render the indictment against the defendant somehow invalid. *See United States v. Suescun*, 237 F.3d 1284, 1287 (11ᵗʰ Cir. 2001); *United States v. Baldwin*, 541 F. Supp. 2d 1184, 1214 (D.N.M. 2008).

For the foregoing reasons, even assuming that they were not procedurally barred, Mr. Gewin's July 30, 2009 Petition and his April 15, 2010 Petition nonetheless fail on the merits.

## IV. CONCLUSION

The Court has considered the remaining arguments tendered by the parties and has concluded that they are either without merit or not necessary for resolution of the instant petitions. For the foregoing reasons, the Court concludes that the record conclusively establishes that Mr. Gewin is not entitled to relief on either of his petitions. Accordingly, the Court shall deny both his July 30, 2009 Petition and his April 15, 2010 Petition. *See* Pet. for Writ of Habeas Corpus, *United States v. Gewin*, Criminal Action No. 06-366-01 (CKK) (D.D.C. July 30, 2009), ECF No. [558]; Pet. for Great Writ of Habeas Corpus at 2, *Gewin v. Dodrill*, Civil Action No. 10-782 (CKK) (D.D.C. May 13, 2010), ECF No. [1-1]. The Court will also dismiss the civil action in which Mr. Gewin's April 15, 2010 Petition was filed. Two appropriate orders accompany this memorandum opinion.

Dated: April 25, 2011

                                   **COLLEEN KOLLAR-KOTELLY**
                                   United States District Judge